THE GREENVILLE AND HUDSON RAILWAY COMPANY, appellant,

*v.*

SAMUEL H. GREY, attorney-general, ex rel. THE MORRIS & CUMINGS DREDGING COMPANY, respondent.

[Argued June, 1900.   Decided March 4th, 1901.
Filed March 4th, 1901.]

1. Under the General Railroad law (*Gen. Stat. p. 2654 pl. 61*), more than one railroad may, as against the state, be constructed and operated upon one surveyed route or location.

2. Under the same law (*Gen. Stat. p. 2660 pl. 83*) the survey for a branch of a railroad need not be made and filed with the survey of the main line and a branch railroad may lawfully be constructed, although the *termini* of the main line are both within the same county.

3. Under "An act concerning railroad corporations," approved March 10th, 1893 (*Gen. Stat. p. 2716 pl. 338*), municipal consent is only required for the construction of such branch railroads in cities or towns as acquire legal authority from that statute, namely, those to a mill, factory or other manufacturing establishment or clay-bed.

4. Under the supplement, approved March 3d, 1880 (*Gen. Stat. p. 2685 pl. 201*), to "An act respecting railroads and canals," whenever the railroads of any railroad corporations existing by, or organized under, any law of this state approach each other within the distance of one mile, a branch railroad may, by the consent of the two companies, be constructed by either company for the purpose of connecting such railroads, and it will be no objection to the legality of such a branch railroad that it unites with the main line on both sides of the connection.

---

On appeal from two orders advised by Vice-Chancellor Emery, the one granting an injunction and the other refusing to dissolve it. The opinions of the vice-chancellor are respectively reported in *46 Atl. Rep. 636, 638.*

On January 25th, 1900, the attorney-general, on relation of the Morris & Cumings Dredging Company, owners of land at the foot of Chapel avenue, a public highway in Jersey City, and that company, as complainant, filed a joint information and bill against the Greenville and Hudson Railway Company, a corporation organized in 1895 under the General Railroad law. It was alleged that the defendant, without consent of the municipality, was about to lay railroad tracks across Chapel avenue, at grade, some of which tracks would be outside of its filed route, and injunction against this was prayed. The defendant answered, denying that a grade crossing had ever been contemplated and averring that its purpose then was to construct two railroad tracks across Chapel avenue, under grade, upon a route filed as its branch No. 1, on January 31st, 1900, which route, at Chapel avenue, was coincident with that of branch No. 2 of the Jersey City Belt Line Railway Company, organized in 1890 under the General Railroad law, and that such construction was to be with the consent of that company—both corporations forming part of the Lehigh Valley system for receiving and handling the traffic sent to and from tide-water over the Lehigh Valley railroad. Affidavits in support of this answer and copies of the filed routes of the two

49

branches and of the consent referred to were appended.     The
injunction prayed was denied.     Thereupon, by supplemental in-
formation and bill, an injunction was sought against the crossing
of Chapel avenue, under grade, at the proposed location, on the
allegations that municipal consent to the construction of the de-
fendant's branch No. 1 had not been obtained; that the so-called
branch was a mere relocation of part of the defendant's main line
which had not been constructed; that it ran for the most part
practically parallel with that part of such main line and only two
hundred and twenty-five feet distant therefrom, and was *ultra
vires*, and that the proposed construction would lessen the width
of the avenue.     The defendant filed only an affidavit showing
that the travel on Chapel avenue was véry small.     On April 17th,
1900, after hearing a motion for the injunction and a cross-
motion to dismiss the information and bill, the vice-chancellor
decided that the bill should be dismissed, on the ground that the
complainant had no special interest warranting its maintenance,
but that the information should be retained, and that an injunc-
tion should issue according to its prayer.     Orders effectuating
this decision were made and filed on May 2d, 1900.     After the
decision the defendant filed its answer to the information, with
supporting affidavits.     It denied that branch No. 1 was an at-
tempt to relocate its main line, and averred that such line, as
originally located, was in process of construction and was to be
completed.     It further averred the purpose of branch No. 1 to
be to connect with branch No. 2 of the Jersey City Belt Line
railway, and the permanent use contemplated for it to be the
transportation of cars and freight in the course of delivery to
and from the city of Bayonne, and claimed it to be a lawful
branch designed to reach points not reached by its main line and
to make a connection of such main line with other railroads.
It further averred that unless a contract with Jersey City, then
in litigation on *certiorari* prosecuted by the Morris & Cumings
Dredging Company, should be finally held valid, it would not
change Chapel avenue in grade or width or interrupt public
travel thereon, except during actual construction of an under-
grade crossing by its branch No. 1, but claimed that for such
an undergrade crossing municipal consent was not requisite.     In

the meantime there had been railroad construction under grade across Chapel avenue on the line of the coincident routes of the two branches above mentioned, and proceedings in contempt had been instituted, which had been met by the defendant with affidavits that such construction was by the Jersey City Belt Line Railway Company, and a new information had been filed by the attorney-general, on relation of the Morris & Cumings Dredging Company, for an injunction against both railway companies to restrain the construction then in progress. The grounds of relief were substantially those urged against the Greenville and Hudson Railway Company, and it was claimed, as a matter of fact, that a railroad on the filed route of branch No. 2 of the Jersey City Belt Line Railway Company would not be a branch railroad within the purview of the statute, but would be a mere incident to the main line. To this information the Greenville and Hudson Railway Company filed its answer, denying any part in the construction across Chapel avenue, and the Jersey City Belt Line Railway Company filed its answer, admitting construction on the route of its branch No. 2, which it claimed to be a lawful branch, intended to connect its main line with the National Docks railway and the Bergen Neck railway, and asserting that the undergrade crossing of Chapel avenue, with two tracks, had been completed, and that public travel had been restored by means of a wooden bridge, the full width of the avenue, and that nothing more was contemplated, except the substitution, for the bridge, of a steel structure. On May 19th, 1900, the two suits were, by order, consolidated, and a hearing was had on three motions—first, by the attorney-general for an attachment for contempt against the Greenville and Hudson Railway Company for the railroad construction across Chapel avenue; second, by that company for dissolution of the injunction resting upon it, and third, by the attorney-general for an injunction against both railway companies upon the information last filed. On May 29th, 1900, an order was made that the motion for an attachment be continued until final hearing; that the motion to dissolve the injunction against the Greenville and Hudson Railway Company be denied, and that the injunction prayed against the Jersey City Belt Line Railway Company be denied. The

. existing injunction was retained solely on the ground that there· could be no lawful construction of two railroads on the same· located route, and it was held that, as the Jersey City Belt Line Railway Company had, with the assent of the Greenville and Hudson Railway Company, built a railroad on its own location, its previous consent to the last-named company so doing was no· longer operative. The denial of the injunction prayed against the Jersey City Belt Line Railway Company was upon grounds· upholding that company's claims in all respects except as to the question raised that its branch No. 2 was not a branch railroad within the statute, and that question was reserved for final. hearing.

From the order of May 2d, 1900, granting an injunction, and from so much of the order of May 29th, 1900, as denies its dissolution, the Greenville and Hudson Railway Company has appealed.

*Mr. Charles L. Corbin,* for the appellant.

*Mr. Lindley M. Garrison,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

The injunction against the appellant was properly awarded. The information on which it was based, and the annexed proofs, presented a *prima facie* case that the appellant's branch No. 1 was a mere relocation of a part of its main line. To this nothing was interposed but an affidavit minimizing the travel on the highway to be crossed. A lack of power to invade the public right· could not be disregarded merely because not much harm would be· done. The case, as made, was a clear one, and warranted a preliminary injunction. The opinion of the learned vice-chancellor,. as reported in *15 Dick. Ch. Rep. 154,* is entirely satisfactory, as applied to the situation apparently existing. But the answer,. when filed, completely changed that situation or, rather, showed that it had been misconceived. On the motion to dissolve the· injunction it appeared that branch No. 1 was designed for a con--

nection with other railroads, and the reason relied on for award-
ing the injunction was very properly dismissed from judicial
consideration when its dissolution was refused. Under exactly
like conditions the question whether branch No. 2 of the Jersey
City Belt Line Railway Company had legal authority was left
until final hearing, as appears by the opinion reported in *15 Dick.
Ch. Rep. 154*. That feature of this case will be considered later.
I pass now to the ground on which alone the injunction was re-
tained, namely, that two railroads cannot lawfully be constructed,
under the franchise of the General Railroad law, upon the same
surveyed route or location. That statute provides (*Gen. Stat. p.
2654 pl. 61*)

"that a railroad may be located or constructed under this act, on the sur-
veyed route or location of any other railroad, with the consent of such cor-
poration, and not otherwise."

The construction enjoined in this cause was to be upon the
route of branch No. 2 of the Jersey City Belt Line Railway Com-
pany, and for it the appellant had the statutory consent. But
the learned vice-chancellor held that this vested right had been
lost by the appellant's tacit consent to subsequent railroad con-
struction on that route by the company that had granted it.
Rights, and consequent obligations, cannot be so easily lost; but
I do not admit the premise of illegality of a twofold occupation.
Probably against a landowner the additional burden, perhaps
even of an exclusive occupation by the grantee of the right, could
not be imposed; but as against the state no reason for a limita-
tion of the plain words of the statute is perceived. It seems to
me that the use of the right of way, of one hundred feet in width,
given by the statute is entirely at the disposal of the company
acquiring it, so that it be devoted to railroad uses under fran-
chises derived from that source. It may be better for the state
that two railroads shall run on that right of way, or even over the
same tracks, than that more land shall be subjected to the broad
grant of eminent domain conferred by the act. But the question
is not one of expediency; it is a simple one of statutory interpre-
tation, in which there is no room for doubt. Branch No. 1 of the

·appellant has therefore a legal right to its surveyed route and location. Is there any reason why it should not be constructed? Three reasons suggested by the respondent were, in the court below, held to be unfounded. Two were dealt with in the opinion first delivered and the other in that in the consolidated suit. All involve interpretation of statutes, and we have nothing to add to the convincing expression of the views of the vice-chancellor. We approve his declarations that, under the General Railroad law (*Gen. Slat. p. 2660 pl. 83*), the survey for the branch of a railroad need not be filed with the survey of the main line, and that a branch railroad may lawfully be constructed although the *termini* of the main line are both within the same county, and that, under "An act concerning railroad corporations," approved March 10th, 1893 (*Gen. Stat. p. 2716 pl. 338*), municipal consent is only requisite for the construction of such railroads in cities or towns as require legal authority from that statute, namely, those to a mill, factory or other manufacturing establishment or clay-bed. The only other reason urged for holding the injunction is that which the vice-chancellor, as to branch No. 2 of the Jersey City Belt Line Railway Company, reserved until final hearing. As to the appellant it may be disposed of now, for the right seems clear and rests upon statute. The respondent's claim is that appellant's branch No. 1 is not really a branch railroad within the purview of the General Railroad law. Whether so or not, it is within the express authority of another statute. The answer avers, and uncontradicted affidavits prove, that the purpose of this branch is a connection with branch No. 2 of the Jersey City Belt Line railway. A supplement approved March 3d, 1880 (*Gen. Stat. p. 2685 pl. 201*), to "An act respecting railroads and canals" enacts as follows:

"Sec. 1. That whenever the railroads of any railroad corporation existing by or organized under any law of this state shall intersect or cross each other, or shall approach each other within a distance of one mile, and such corporation shall agree to connect their said railroads with each other, it shall be lawful for either corporation to determine upon constructing a branch railroad or railroads so as to effect such connection, and having first filed a map and survey of such branch railroad or railroads in the office of the secretary of state, to acquire, by purchase or by condemnation, in the manner prescribed by its charter, such land as shall be necessary

Greenville & Hudson Ry. Co. *v.* Grey, Att'y-Gen.

for such branch connecting railroads, and for that purpose all such powers as shall be contained in its charter or conferred otherwise by law, shall be fully possessed by and belong to each of such corporations; provided, that all proceedings for such condemnation shall be according to said charters, with all rights of appeal and review thereby given; provided further, that in no case shall any connection be made without mutual consent in writing under seal of such corporations."

The case in hand falls directly within this statute. It is no objection to the legality of the proposed branch railroad that it will leave the main line on one side of the connection and return to it on the other. To compel traffic to be inconveniently carried past a natural point of departure on one side or the other and then be sent backward to the connecting point, with the alternative of laying out two branches, one from each direction, would be an unreasonable construction of the act. The authority is to construct "a branch railroad or railroads so as to effect such connection," and a connecting loop is within the authority. The case does not affirmatively show a sealed consent, in writing, of the two corporations, but that is a matter concerning them only, and will be timely if executed before the actual connection is made. That the two companies whose railroads are to be connected are parts of the Lehigh Valley system is immaterial. They are distinct corporations, and identity of interests affords no ground to deny them their legal rights as such. *National Docks Railway Co.* v. *Central Railroad Co. of New Jersey, 5 Stew. Eq. 755.*

The order of May 2d, 1900, awarding an injunction against the appellant will be affirmed, but the order of May 29th, 1900, denying a motion to dissolve that injunction will be reversed, and the cause will be remitted to the court of chancery, with directions to order its dissolution. Inasmuch as there will be but one bill of costs in this court and the appellant prevails on the merits of the controversy, it should have costs.

*For reversal*—The Chief-Justice, Dixon, Gummere, Collins, Fort, Garretson, Hendrickson, Bogert, Adams, Vredenburgh, Voorhees—11.

*For affirmance*—None.